**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| TYRONE DANIELS, | : |
| Petitioner | : Civil Action No. 17-2965(RMB) |
| v. | : **OPINION** |
| PATRICK NOGAN, *et al.*, | : |
| Respondents. | : |

**BUMB**, District Judge

This matter comes before the Court upon the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Pet., ECF No. 1) filed by Petitioner Tyrone Daniels ("Petitioner"), an inmate confined in New Jersey State Prison in Trenton, New Jersey. Respondents filed an answer opposing habeas relief (Answer, ECF No. 17), and Petitioner filed a traverse. (Traverse, ECF No. 26.) Pursuant to Federal Rule of Civil Procedure 78, the Court will determine the claims presented in the petition on the written submissions of the parties.

I.    PROCEDURAL HISTORY and FACTUAL BACKGROUND

The factual background and procedural history were summarized in part by the New Jersey Superior Court, Appellate Division upon Petitioner's direct appeal.[1]

> After a jury convicted defendant of two counts of first-degree robbery, one count of second-degree conspiracy, one count of fourth-degree aggravated assault, and weapons offenses, Judge James R. Isman imposed an aggregate custodial terms of twenty years with an 85% mandatory parole disqualifier under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On appeal, we reversed the convictions and remanded for a new trial after concluding the court committed reversible error when it admitted other crime evidence. *State v. Daniels*, No. A-5414-05 (App. Div. May 21, 2018) (slip op. at 11, 12). Upon retrial, the jury convicted of one count of armed robbery, N.J.S.A. 2C:15-1, and found him not guilty of the remaining charges. At sentencing, Judge Isman denied the State's motion to impose an extended term. He then imposed a twenty-year custodial term together with a mandatory 85% NERA parole disqualifier.
>
> The robbery took place at the Trump Taj Mahal Casino where defendant's girlfriend, co-defendant Margaret Robertson, was employed as a cashier. Following the robbery, she was identified as the person who had taken a magnetic card that allowed access to the cashier's office. She was arrested and agreed to cooperate with police. She implicated defendant as the perpetrator of the robbery. Tracey Smith, testified that she was unable to identify the perpetrator by facial description. Beyond testifying the individual was black, wearing a Kangol hat and white

---

[1] The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C.§ 2254(e)(1).

2

> shirt, Smith could provide no other identifying information to police.
>
> Robertson testified that she had been involved with defendant for about one year prior to the robbery and that defendant started asking her questions about how to gain access into and out of the cashier's office. She explained the operation to him, including that a summer weekend could generate as much as $100,000 in receipts. She agreed to get an access card for him, which she gave to defendant three days before the robbery, and defendant told her to keep her mouth shut. *State v. Daniels*, A-1542-10T1, 2013 WL 2419898 (N.J. Super. Ct. App. Div. June 5, 2013).

The Appellate Division affirmed Petitioner's conviction and sentence on June 5, 2013. <u>Id.</u> On December 18, 2013, the New Jersey Supreme Court denied Petitioner's petition for certification. <u>See</u> <u>State v. Daniels</u>, 82 A.3d 431 (N.J. 2013). On May 25, 2012, Petitioner filed a counseled letter brief in support of his petition for post-conviction relief ("PCR") that was denied on the merits. (Answer, Ex. 12 ECF No. 9-12, Ex. 8, ECF No. 9-8 at 25.) The Appellate Division affirmed the PCR Court on October 18, 2016. <u>State v. Daniels</u>, A-5190-14T3, 2016 WL 6081448 (N.J. Super. Ct. App. Div. Oct. 18, 2016). On February 13, 2017, the New Jersey Supreme Court denied Petitioner's subsequent petition for certification. <u>State v. Daniels</u>, 160 A.3d 699 (N.J. 2017).

Petitioner then filed the present habeas petition on May 1, 2017. (Pet., ECF No. 1.) Petitioner raises seven claims in the instant petition, which are as follows-

"POINT I: THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT THE STATE WAS REQUIRED TO PROVE IDENTIFICATION BEYOND A REASONABLE DOUBT DEPRIVED THE DEFENDANT OF DUE PROCESS AND A FAIR TRIAL UNDER BOTH THE NEW JERSEY AND FEDERAL CONSTITUTIONS."

"POINT II: IMPOSITION OF A 20 YEAR SENTENCE ON THE DEFENDANT'S CONVICTION WAS MANIFESTLY EXCESSIVE."

"POINT I: TRIAL COUNSEL DID NOT CALL OFFICERS J. DONATUCCI AND M. LOSASSO AS WITNESSES TO A MOTION TO SUPPRESS EVIDENCE HEARING." [2]

"POINT II: TRIAL COUNSEL FAILED TO APPEAL THE DENIAL OF MOTION TO SUPPRESS."

"POINT III: TRIAL COUNSEL FAILED TO CHALLENGE THE PROBABLE CAUSE TO ARREST DEFENDANT INITIALLY, NOR FILE A MEMORANDUM PROBABLE CAUSE HEARING."

"POINT IV: JUDGE ERRED BY ALLOWING 'HEARSAY TESTIMONY' WHICH WAS INADMISSIBLE AT A MOTION TO SUPPRESS HEARING."

"POINT V: TRIAL JUDGE ERRED IN REFUSING TO ENTER A JUDGMENT OF ACQUITAL IN FAVOR OF DEFENDANT ON COUNT ONE OF INDICTMENT." (Id. at 17-18.)

Respondents filed an answer on January 8, 2018. (Answer, ECF No. 9.)

II.  DISCUSSION

_____

[2] Petitioner identifies two different sets of claims as "Point I" and "Point II."

4

A.  Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings
> unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts
> in light of the evidence presented in the
> State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the United States Supreme Court decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an

erroneous application. <u>Eley</u>, 712 F.3d at 846 (quoting <u>Renico v.</u> <u>Lett</u>, 130 S.Ct. 1855, 1862 (2010)).

B.  <u>Analysis</u>

1.  <u>Ground One</u>

a.  <u>The Parties' Arguments</u>

In Petitioner's first ground for relief,[3] he claims that the trial court violated his Fifth Amendment right to a fair trial by failing to instruct the jury of the state's burden to prove identification beyond a reasonable doubt. (Pet., ECF No. 1 at 17.) The Court notes that Petitioner does not provide any supporting arguments or facts other than the subheading, but rather asks the Court to consider his identical argument in state court.[4] (<u>Id.</u>)

Respondents contend that Petitioner, through counsel, declined the jury instruction charge on identification. (Answer, ECF No. 9 at 11.) Respondents further contend that both the trial court and counsel agreed that providing the identification instruction could serve against Petitioner's interest. (<u>Id.</u>) Finally, Respondents argue that because Margaret Robertson was Petitioner's acquaintance and co-defendant, the issue was not a matter of whether she had an opportunity to accurately identify the Petitioner but rather whether her account of Petitioner's conduct was credible. (<u>Id.</u>)

---

[3] Petitioner labels this claim as "Point I" in his petition.
[4] Petitioner's brief on direct appeal is not in the record.

## b. State Court Decision

On habeas review, the district court must review the last reasoned state court decision on each claim. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The highest state court decision with respect to this claim is the Appellate Division's opinion on direct appeal. The Appellate Division addressed this claim as follows:

> Because defendant did not request an instruction nor object to the court's jury charge, we review the claimed error under the plain error standard. R. 2:10-2. "In the context of a jury charge, plain error requires demonstration of '[l]egal impropriety . . . prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Burns, 192 N.J. 312, 341 (2007) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).. . . .

> Reviewed under that standard, we find no error, let alone plain error. Defendant was not implicated in this offense based upon an identification procedure that required an instruction on identification. Rather, defendant was implicated by Robertson, his co-defendant and girlfriend, who at that time, was a cashier at the casino. Moreover, when the question was asked whether there should be an identification instruction with respect to Robertson's identification of defendant as the perpetrator, defense counsel responded, "No, Judge." Defense counsel also agreed with the judge's assessment that

> > it's not really a questionable identification, or a questionable procedure or process used. It's whether or not she's intentionally identifying Mr. Daniels as the

> perpetrator knowing it was on the
> who did it.
>
> . . .
>
> It would be different if it was Miss
> Smith identifying the actual
> assailant. Of course, because she's
> a stranger to him, but not someone
> who is not a stranger to him.

Thus, the State's burden to prove, beyond a reasonable doubt, that defendant was the person who committed the robbery hinged solely upon the jury's credibility assessment of Robertson's testimony. Based upon the verdict, the jury credited this testimony.

Daniels, 2013 WL 2419898 at *1-2.

## Analysis

A habeas petitioner who challenges state court jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Therefore, when a habeas petitioner challenges jury instruction provided in a state criminal proceeding,

> the only question for [the federal court] is
> "whether the ailing instruction by itself so
> infected the entire trial that the resulting
> conviction violates due process." It is well
> established that the instruction "may not be
> judged in artificial isolation," but must be
> considered in the context of the instructions
> as a whole and the trial record. In addition,
> in reviewing an ambiguous instruction . . . ,

> [the federal court] inquire[s] "whether there
> is a reasonable likelihood that the jury has
> applied the challenged instruction in a way"
> that violates the Constitution. And [the
> court] also bear[s] in mind . . . that
> [the federal courts]
> "have defined the category of infractions that
> violate "fundamental fairness' very
> narrowly." "Beyond the specific guarantees
> enumerated in the Bill of Rights, the Due
> Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991)(citations omitted).

A failure to instruct is even less likely to give rise to a successful habeas claim. "Indeed an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

Robertson had an approximately year-long sexual relationship with Petitioner and was also charged in the offense as a co-defendant. (Answer, Ex.4, ECF No. 9-4 at 88-93, 110-11.) Robertson testified that Petitioner planned and executed the robbery with her knowledge and assistance. (Id. at 93-104.) Her assistance included giving Petitioner a guided tour of the casino in preparation for the heist and providing him with an access card to the cashier's office. (Id. at 99-103.) Notably, Robertson testified that she was not at the casino on the day of the robbery. (Id. at 123.) Moreover, Tracey Smith, the casino employee who Petitioner robbed at gun point, did not provide an in-or-out of court identification of the person who robbed her. Smith only testified that the perpetrator was black and was wearing a white

shirt and a hat. (Id. at 39-40.) For this reason, Petitioner's claim that he was denied due process because of the omission of the identification instruction is without merit. The Appellate Division reasonably concluded that the trial court's not providing the identification instruction was proper. Therefore, this claim is denied.

### 2. Ground Two

#### a. The Parties' Arguments

Petitioner next contends that his twenty-year sentence was manifestly excessive.[5] (Pet., ECF No. 1 at 17.) Respondents contend the Appellate Division's determination was not unreasonable. (Answer, ECF No. 9 at 14-15.)

#### b. State Court Decision

The highest state court decision with respect to this claim is the Appellate Division's opinion on direct appeal. The Appellate Division addressed this claim as follows:

> Defendant's remaining claim that the twenty-year sentence imposed was manifestly excessive is without sufficient merit to warrant discussion in a written opinion. R.2:11-3(e)(2). We add the following comments.
>
> Although extended-term eligible, the judge denied the State's motion to impose an extended term. The judge next properly considered the

---

[5] Petitioner labels this claim as "Point II" in his petition.

> statutory aggravating and
> mitigating sentencing factors,
> N.J.S.A. 2C:44-1(a) and (b). The
> judge found aggravating factors
> three, N.J.S.A. 2C:44-1(a)(3)(the
> possibility that defendant will
> commit another offense); six,
> N.J.S.A. 2C:44-1(a)(6)(the extent
> of defendant's prior criminal
> record and seriousness of offenses
> for which he has been convicted);
> and nine, N.J.S.A. 2C:44-
> 1(a)(9)(the need for record, and the
> sentence imposed, although the
> maximum for a first-degree crime.
> Since there is neither clear error
> on the judge's part in his adherence
> to the sentencing guidelines, not a
> sentence imposed which, under the
> circumstances, "shocks the
> conscience," there is no reason for
> appellate intervention. State v.
> Ghertler, 114 N.J. 383, 387-
> 88(1989).

Daniels, 2013 WL 2419898 at *2.

### c.   Analysis

The legality and length of a sentence are generally questions

of state law over which this Court has no jurisdiction under §

2254. See Chapman v. United States, 500 U.S. 453, 465 (1991);

Harmelin v. Michigan, 501 U.S. 957, 994-95 (1991); Wainwright v.

Goode, 464 U.S. 78 (1983). A federal court's ability to review

state sentences is limited to challenges based upon "proscribed

federal grounds such as being cruel and unusual, racially or

ethnically motivated or enhanced by indigencies." See Grecco v.

O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).

Petitioner has provided no support for his claim that his twenty-year sentence was unconstitutional. See 28 U.S.C. § 2254(a). ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.")

Petitioner has not raised a colorable federal claim. Further, as the Appellate Division noted, although he was extended-term eligible, the judge denied the state's motion to impose such a term.  Therefore, this claim is denied.

### Ineffective Assistance of Counsel Claims

Petitioner contends that the trial court erred in denying PCR without holding an evidentiary hearing to hear Petitioner's ineffective assistance of trial counsel claims.

### 3.    Grounds Three and Four

#### a.    The Parties' Arguments

In Petitioner's next two claims, he contends that he was denied his right to effective assistance of counsel because of his trial counsel's failure to call Officers Donatucci and Losasso as defense witnesses at his suppression hearing as well as his counsel's failure to challenge whether there was probable cause to

initially arrest him.[6] (Pet., ECF No. 1 at 17-18.) Because the claims are so interrelated, the Court will analyze them simultaneously.

Petitioner has not provided any facts or supporting arguments. Accordingly, the Court has reviewed his state court filings to better understand the contours of these claims. In his PCR filings, Petitioner argued that he urged his trial counsel to call Officers Donatucci and Losasso as witnesses to corroborate his claim that he was unlawfully arrested and that some of his personal belongings, including cash and a home theater system, were unlawfully seized. (Answer, Ex. 12, ECF No. 9-12 at 9.) He also argued that had the officers been called to testify, "it would have established that the co-defendant's identification was not credible and only was the product of an unreliable and suggestive police procedure." (Id.) In his appeal of the PCR decision, Petitioner filed a pro se brief arguing that Officers Donatucci and Losasso, who transported him to the police station after his arrest, "searched, and seized $371.00 from his person and placed the money into evidence and detained defendant." (Answer. Ex. 15, ECF No. 9-15 at 11.)

---

[6] Petitioner labels these two claims as "Point I" and "Point III" in his petition.

Respondents assert that the Appellate Division properly resolved Petitioner's claims as Petitioner has not demonstrated that counsel was ineffective for not compelling these detectives' testimony nor for not challenging whether there was probable cause to arrest Petitioner. (Answer, ECF No. 9 at 17-20.)

b. State Court Decision

The Appellate Division summarily denied the claims as meritless pursuant to R.2:11-3I(2) on appeal of the PCR denial.[7] 2016 WL 6081448 at *2. "[F]ederal habeas law employs a 'look through' presumption." Wilson v. Sellers, 138 S. Ct. 1188, 1194 (2018). In cases in which the last reasoned decision is unexplained, the federal court should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." Id. at 1192.

The PCR Court, which provided the last reasoned decision, denied the claims as follows-

> The second issue relates to the Officers Donatucci and Losasso. The fact that the defendant regards these two officers as essential witnesses at a suppression hearing, of course, doesn't automatically turn them in to essential witnesses. This is an argument that has a fairly convoluted path because it appears to dovetail with the argument that the

---

[7] This rule authorizes an affirmance when in an appeal of a criminal, quasi-criminal or juvenile matter, the Appellate Division determines that some or all of the arguments made are without sufficient merit to warrant discussion in a written opinion.

defendant was arrested without probable cause and without a warrant. And it seems to also be dovetailing into the whole business of the fact that the affidavit for the warrant gave the defendant's street name as Ice Cream while his name was really just Cream, which according to the defense, was a material misrepresentation, which had it not been made would somehow have militated against issuing the search warrant.

Really the defendant hasn't given any information about what these two officers would've testified to that would've made them into essential witnesses. He through counsel argues today that, well, they'd testify that the $317 and the DVD from the car were seized illegally. First of all, I doubt if they would testify as to a legal conclusion regarding whether the seizure was legal or not.

But the long and the short of it is the bottom line, it seems to me that, as I pointed out, outside of the defendant's speculation, something must've been afoot because it took five hours to get a warrant. These two pieces of evidence don't seem to have had any relevance to the judge finding probable cause for the warrant.

And as we know, searches pursuant to warrants are presumptively valid. The burden of proof, of course, it on the defense where there is a warrant. And there's really no suggestion, no argument that the affidavit as it was presented failed to make out probable cause. Really the argument seems as much as anything to be that they called him by the wrong street name and Donatucci and Losasso would've had really important things to add.

. . .

Number five, that the trial counsel didn't challenge the probable cause to arrest the defendant initially. Well, the first thought I have here is that by the time this was at

15

trial, whatever, if there were any problems with probable cause to arrest, I think it would've been cured by an indictment. But let's not forget what probable cause is. It - - probably cause exists where facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed and that the defendant has committed it.

And let's also recall that it's not a Constitutional imperative for police to secure an arrest warrant even when that is practicable as long as the arrest is supported by probable cause.

And here, what did the police - -  what knowledge did they have? They had an identification of the defendant as the perpetrator by a person with whom he had a sexual relationship for over a year. So the point of that is obviously that she knew who he was. He had been identified by this person, whom he knew intimately, who also said she had provided him with a stolen key to the cashier's cage and who said she had gone to some lengths to rehearse him on the procedures in the casher's cage and she told them what kind of a car he drove. The police then staked out the defendant's residence, saw him arrive there in the car that fit the description given by Miss Robertson. For my money, that's probable cause to arrest.

.  .  .

And the good news for the system is that trial attorneys in order to be Constitutionally effective and appellate counsel as well are not obliged to advance arguments that are not meritorious or to file motions which have no reasonable basis. And, in fact, they have certain ethical obligations to refrain from litigating in that fashion.

> And if it were otherwise, I think the thickets
> of the law would be – – would quickly become
> impenetrable and our ability to administer
> criminal justice could be turned on its head.
> I don't really see that there's anything here.
> I find no prima facie showing of ineffective
> assistance by trial or appellate counsel.

(Answer, Ex. 8, ECF No. 9-8 at 19-20, 22-25.)

### c. Analysis

The Supreme Court set forth the standard by which courts must evaluate claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. Second, the defendant must show that he was prejudiced by the deficient performance. Id. This requires showing that counsel's errors deprived the defendant of a fair trial. Id.

Counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." Id. at 690. In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct, and must make every effort to escape what the Strickland court referred to as the "distorting effects of hindsight." Id. The petitioner bears the burden of showing that

counsel's challenged action was not sound strategy. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). Furthermore, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standard." Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the Strickland standard itself." Id. Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." Id. (quoting Cullen v. Pinholster, 131 S.Ct. at 1403 (2011). Federal habeas courts must "take a highly deferential look at counsel's performance" under Strickland, "through the deferential lens of § 2254(d)." Id. (internal quotation marks and citations omitted). "With respect to the sequence of the two prongs, the Strickland Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed.'" Rainey v. Varner, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting Strickland, 466 U.S. at 697)).

In addition to the standard set by Strickland and its progeny, the Third Circuit Court of Appeals has provided that counsel is not ineffective just because he does not act in accordance with the defendant's wishes. See Diggs v. Owens, 833 F.2d 439, 445-46 (3d. Cir. 1987). Moreover, the petitioner must demonstrate how the witness's testimony would have been favorable to his defense. See United States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989).

The state court reasonably concluded that trial counsel was not ineffective. Petitioner has not established how the results of the suppression hearing would have been any different with the officers' testimony.

Petitioner argues that he was unlawfully arrested outside of his home without a valid arrest warrant or probable cause. At his pre-trial suppression hearing, Detective Stacey Falcone of the Atlantic City Police Department testified about the investigation that led to Petitioner's apprehension. (Answer, Ex. 9, ECF No. 9-1 at 5-23.) Detective Falcone described how Margaret Robertson assisted law enforcement in their investigation by explaining her role in the conspiracy. (Id. at 9-14.) Falcone testified that Robertson only knew Petitioner by his abbreviated nickname, "Cream." (Id. at 11.) Nonetheless, law enforcement personnel were

able to obtain a photograph of an individual in their database who went by that nickname. (Id. at 13.) Robertson identified the photograph of Petitioner as the man she knew as "Cream." (Id. at 14.) Law enforcement then observed Petitioner outside of a residential structure at an address that he was associated with. (Id. at 22-23.)

Petitioner submits that $371.00 was seized from his person upon his arrest. The record reflects that law enforcement arrested Petitioner in public, after investigating the robbery for several hours and even obtaining a positive photographic identification of the Petitioner. See United States v. Watson, 423 U.S. 411, 416-24 (1976)(Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe a felony has occurred.)

Even if for the sake of argument, Petitioner's initial arrest did lack probable cause, he still cannot establish that he was prejudiced by counsel's decision not to challenge his detention as he was eventually convicted of the charged crimes. See Gerstein v. Pugh, 420 U.S. 103, 119 (1975) ("[A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.")

Additionally, as to Petitioner's claim that a home theater system was unlawfully seized from his vehicle at the time of his arrest, the record belies this claim. Detective Falcone testified that Petitioner's mother, who owned the vehicle that Petitioner was seen driving, gave written consent for the officers to search her vehicle. (Answer, Ex. 5, ECF No. 9-4 at 42.)

Finally, Petitioner's claim that the unavailable officers' testimony would have supported his argument that the identification was impermissibly suggestive, equally fails. Petitioner has not presented a single fact to support that Officers Donatucci and Losasso were involved in the identification process involving Margaret Robertson. The record reflects that Officers Donatucci and Losasso were not present when Robertson provided a photographic identification of the Petitioner. (Answer, Ex. 5T, ECF No. 9-5 at 11-12.) Detective David Smith testified at Petitioner's trial that he and Detective Falcone were the only law enforcement personnel present to interview Robertson. (Id. at 10.)

Therefore, the state court's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Consequently, both claims are denied.

4.   Ground Five

a.   The Parties' Arguments

Petitioner's next ground for relief is that his second trial counsel was ineffective for failing to challenge the suppression motion ruling.(Pet., ECF No. 1 at 18.)

Once again, Petitioner does not provide any supporting facts to this claim in his federal habeas petition. This Court reviewed Petitioner's state court filings to better understand the contours of this claim. In his <u>pro</u> <u>se</u> PCR filing, Petitioner argued that because his first conviction was reversed on other grounds, the Appellate Division never addressed the merits of Petitioner's claims that related to the suppression motion denial. (Answer, Ex. 15, ECF No. 9-15 at 14-15.) Consequently, Petitioner submits that he unsuccessfully asked his second trial counsel to request a suppression hearing, however counsel "conceded to allowing the second trial court judge to conduct a summary review." (<u>Id.</u> at 14.) He further argues "that he was entitled to a full and complete hearing with the ability to present new evidence and arguments." (<u>Id.</u> at 15-16.) Finally, he submits that "counsel was ineffective for not pursuing a new motion to suppress especially since at a new hearing defendant could have called Officers J. Donatucci and M. Losasso, who were not subpoenaed at defendant's first suppression hearing, and counsel could have laid the foundation, and thus argued the misrepresentation of the evidence seized, and defendant's illegal arrest . . . " (<u>Id.</u> at 16.)

Respondents assert that Petitioner has failed, among other things, to demonstrate how counsel's failure to request a suppression hearing prior to the retrial constituted ineffective assistance, when the record reflects that Judge Isman considered the facts and legal issues as they related to Petitioner's arrest and the search of his home prior to declining to reconsider Judge Neustadter's decision. (Answer, ECF No. 9 at 20.)

### b. State Court Decision

On appeal of the PCR denial, the Appellate Division summarily denied this claim as meritless pursuant to R.2:11-3(e)(2). Daniels, 2016 WL 6081448 at *2.

### c. Analysis

The Court will not reiterate the ineffective assistance of counsel standard applied in such claims. See supra, Section II, B 3 c.

Judge Robert Neustadter presided over Petitioner's pre-trial suppressing hearing on December 2, 2005, prior to Petitioner's first trial. (Answer, Ex. 1, ECF No. 9-1.) At that hearing, the defense sought to have several items suppressed including: cash that was taken from Petitioner's person at the time of his arrest as well as items seized from Petitioner's residence after a search warrant was obtained. (Id. at 4.) At the conclusion of the testimony and oral arguments, Judge Neustadter issued an oral decision denying the motion. (Id. at 33-36.) The judge found

Petitioner's arrest on a public street as well as the search of Petitioner's home and his mother's vehicle to be lawful. In reaching its ruling, the court considered the investigation conducted by law enforcement and the information they had obtained to establish probable cause prior to making contact with Petitioner. (Id. at 34-35.) Further, the court considered the search warrant affidavit and the fact that the searching police complied with its contours. (Id. at 36.)

Prior to Petitioner's second trial, Judge James E. Isman, considered the matter again, opining in part as follows-

> Now, I did not conduct the motion to suppress.
> The motion to suppress was conducted by Judge
> Neustadter. And I do not have his notes, nor
> could I read his notes most likely. What I do
> have is the briefs that were submitted and
> what I do have, if you will, is a synopsis of
> the law. And to my knowledge there has been
> not [sic] case on point either with regard to
> warrantless or with a warrant, that has
> changed what the law was back in 2005 when the
> motion to suppress was denied.
>
> The—certainly the search warrant for 399 North
> Connecticut Avenue, it would be very difficult
> to overturn that in light of pretty obvious
> probable cause that was in the affidavit, as
> Judge Neustadter found. And the warrantless
> part of the arrest seemed to be based upon a
> valid consent given, albeit by the mother. But
> the police had a great deal of information
> already, I believe, from Ms. Robertson at the
> point in time that they went to find this
> gentleman at 399 North Connecticut Avenue.
>
> And I really find nothing in the case law since
> or in the rulings of Judge Neustadter or, more
> specifically, by virtue of the fact that the

> Appellate Division didn't even discuss it.
> Because normally what they'll do if they're
> going to reverse a case or remand a case, they
> will also include any other issue that they
> feel needs readdressing because they don't
> want – most appellate panels certainly don't
> want – you would hope to think they don't want–
> a case tried three times instead of just two.
> Any my experience has been uniformly that they
> would have addressed they if they deemed
> either to be an issue, the warrantless search
> or the search with a warrant.

(Id. at 7-8.)

The denial of this claim is consistent with Supreme Court precedent. Petitioner has failed to show how his second trial counsel's performance fulfills either Strickland prong. The record does not support that counsel's representation was deficient nor that any arguable deficiency caused Petitioner to be prejudiced. Other than Petitioner's bare assertion that his second trial counsel should have presented additional witness testimony to establish that both his arrest and search of his property was unlawful, he has not provided a single fact to support this. This Court notes that it has already considered and denied Petitioner's claim that counsel was ineffective for failing to call Officers Donatucci and Losasso to the suppression hearing. See supra, Section II.B.2.c. Further, Petitioner has not stated what other evidence or arguments should have been made that would have supported his Fourth Amendment claims.

Therefore, this claim is denied.

5. <u>Ground Six</u>

a. <u>The Parties' Arguments</u>

In Petitioner's sixth ground for relief, Petitioner contends that the trial court erroneously permitted hearsay testimony at his suppression hearing. (Pet., ECF No. 1 at 18.)

Respondents assert that Petitioner first raised this claim on appeal of the PCR court's decision. Thus, Respondents claim it is an unexhausted claim that should not be subject to federal habeas review. (Answer, ECF No. 9 at 21-23.)

b. <u>State Court Decision</u>

Petitioner raised the instant claim for the first time on direct appeal of the PCR denial. The Appellate Division denied the appeal without considering this particular claim. <u>Daniels</u>, 2016 WL 6081448 at *2.[8]

c. <u>Analysis</u>

Notwithstanding Respondents' argument that this claim should not be subjected to federal habeas review because it was unexhausted, the Court need not address that issue as the claim can be denied on the merits. <u>See</u> <u>Granberry v. Greer</u>, 481 U.S. 129, 131, 135 (1987) (noting that the exhaustion requirement is not a jurisdictional requirement to the exercise of habeas corpus

---

[8] While the Appellate Division summarily denied Petitioner's ineffective assistance of counsel claims, it did not consider this particular claim at all.

jurisdiction over the merits of a state prisoner's claims and a district court may deny a claim on its merits despite non-exhaustion "if it is perfectly clear that the applicant does not raise even a colorable federal claim.").

At Petitioner's pre-trial suppression hearing, Detective Falcone testified about the investigation of the casino robbery. (Answer, Ex. 1, ECF No. 9-1.) At times throughout her testimony, Detective Falcone referenced her colleagues' roles in the investigation, which included viewing surveillance footage from the casino as well as interviewing witnesses. (Id. at 7.) Petitioner's counsel objected to this type of testimony on the grounds that the statements were hearsay. (Id. at 7-9.)

> MR. MOSES: Judge, I object to that. This is my problem with this witness. She didn't see anything.
>
> MR. COSTANTINI: What would be the basis for the objection?
>
> MR. MOSES: Hearsay.
>
> MR. COSTANTINI: Hearsay—Your Honor, I would submit hearsay is admissible at a Motion to Suppress evidence.
> This officer is entitled to testify as to her knowledge that she had, and she is ultimately the officer who prepared the search warrant. She gave direction to certain other officers to do certain things based upon the information that she learned. And you are doing – it is a fairly obvious when you are doing an investigation of this magnitude where 73,000 – – almost $74,000 is stolen and somebody is running around with a handgun in a casino hotel, that there are different

officers assigned to different things, and
they share their information with each other.
And her probable cause what she believed is
based upon bits and pieces that she learned,
things that she learned from the people there
and that is hearsay, too. But this is
information she learned from the witnesses.

THE COURT: Well, it is admissible not to prove
the truth of all of the assertions that she is
making - -

MR. COSTANTINI: Right.

THE COURT: - - but simply to lay a foundation
for having been given certain information by
way of secondhand disclosure. She can explain
based upon that which is hearsay, but it's not
hearsay in a sense that it is not admissible
because it's not being offered for the truth.
It is being offered only by way of background
to explain what she did having been given that
information.

MR. COSTANTINI: Thank you, Judge.

THE COURT: So your objection is well taken,
but - -

(Id. at 7-8.)

Federal Rule of Evidence 801(c) defines hearsay as "a

statement, other than one made by the declarant while testifying

at trial, offered in evidence to prove the truth of the matter

asserted." When the prosecution attempts to introduce an

unavailable declarant's out-of-court statement against an accused,

courts must decide whether the offered statement is permissible

under the Confrontation Clause. Lilly v. Virginia, 527 U.S. 116,

123-24 (1999).

Under New Jersey law, "where statements are offered not for the truthfulness of their contents, but only to show that they were in fact made and that the listener took certain action as a result thereof, the statements are not inadmissible hearsay." Spragg v. Shore Care, 679 A.2d 685,697 (N.J. 1996)(citations omitted).

Here, the challenged testimony was not offered for its truth but rather to show the effect it had on the law enforcement personnel investigating the robbery. More specifically, its effect on Detective Falcone and her colleagues' actions. Consequently, Falcone's testimony does not implicate the Sixth Amendment confrontation rights. Therefore, this claim is denied.

6. <u>Ground Seven</u>

a. <u>The Parties' Arguments</u>

Finally, Petitioner contends that the trial court erroneously refused to enter a judgment of acquittal on count one of the indictment.[9] (Pet., ECF No. 1 at 18.)

Respondents assert that Petitioner first raised this claim on appeal of the PCR court's decision. Thus, they assert it is an unexhausted claim that should not be subject to federal habeas review. (Answer, ECF No. 9 at 21-23.)

---

[9] Count one of the indictment charges Petitioner with first degree robbery pursuant to N.J. Stat. Ann. § 2C:15-1. (Answer, Ex. 14, ECF No. 9-14 at 31.)

b. State Court Decision

Petitioner raised the instant claim for the first time on direct appeal of the PCR denial. The Appellate Division denied the appeal without considering this particular claim. Daniels, 2016 WL 6081448 at *2.[10]

c. Analysis

Notwithstanding Respondents' argument that this claim should not be subjected to federal habeas review because it was unexhausted, the Court need not address that issue as the claim can be denied on the merits. See Granberry, 481 U.S. at 131, 135.

Here, Petitioner claims that "the verdict of guilt to the remaining count of first-degree robbery (while armed)in violation of the N.J.S.A. 2C:15-1a (count 1), was against the weight of the evidence, and on its face, inconsistent with the jury finding of not guilty on all the counts charged."[11] (Answer, Ex. 15, ECF No. 9-15 at 23-28.) He adds that "a second jury trial ended with a guilty verdict to the sole count of first-degree robbery (while armed), and verdicts of not guilty to the rest of the counts that were elements of count one of the indictment."(Id. at 27).

_____

[10] While the Appellate Division summarily denied Petitioner's ineffective assistance of counsel claims, it did not consider this particular claim at all.`
[11] Petitioner does not provide any supporting arguments in the instant petition, however, the Court reviewed his appeal of the PCR court's decision to better understand the contours of the instant claim. (See Answer, Ex. 15, ECF No. 9-15 at 23-28.)

Petitioner cites to a portion of the trial court's jury instruction on the robbery and armed robbery counts, respectively, to support his argument that the verdicts on those charges were inconsistent. (<u>Id.</u> at 24-25.)

A claim that the jury's verdict was against the weight of the evidence is "essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support in violation of Petitioner's due process." <u>Douglas v. Hendricks</u>, 236 F.Supp.2d 412, 435–36 (D.N.J. 2002) (Walls, J.) (citation omitted). The United States Supreme Court articulated the standard governing a challenge to the sufficiency of the evidence in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). The Court held that a reviewing court must ask itself "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (citation omitted). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." <u>Id.</u> at 324 n. 16; <u>see</u> <u>also</u> <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1059 (1998). State court factual determinations are presumed to be correct. <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 186 (3d Cir. 2000), <u>cert. denied</u>, 532 U.S. 980 (2001).

Under New Jersey law, first degree robbery entails-

a. A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another; or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

(b). Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actors attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

N.J. Stat. Ann. § 2C:15-1.

Here, the record reflects that Tracey Smith testified that a man later identified as Petitioner entered the casino cashier's office, pointed a gun at her and grabbed a bag containing several thousand dollars in cash. (Answer, Ex.4, ECF No. 9-4 at 36, 39-41.) The jury weighed the credibility of the evidence and concluded that Petitioner was guilty of first degree robbery.

Furthermore, the record belies Petitioner's assertion that the jury improperly reached a guilty verdict on the armed robbery count despite a not guilty verdict on the robbery count. (Answer,

Ex. 6, ECF No. 9-6 at 146-47.) The record reflects[12] that the jury found Petitioner guilty on Count 1(a), the count associated with robbery; before proceeding to find him guilty of Count 1(b), the armed robbery count. Consequently, the jury's determination was not inconsistent with the trial court's instruction or for that matter, New Jersey law. Therefore, Petitioner's final claim is denied.

IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

---

[12] The exhibits filed in this Court do not include the relevant jury verdict form. While Respondents did file an undated jury verdict form (Answer, Ex. 14, ECF No. 9-14 at 40-41), it appears to be consistent with the counts Petitioner was convicted of at his first trial and therefore not considered by this Court for the purposes of assessing the instant claim.

For the reasons discussed above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

V.    CONCLUSION

In the accompanying Order filed herewith, the Petition for habeas relief under 28 U.S.C. § 2254 is denied.

Dated: October 7, 2019

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**